UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN VAZQUEZ,<br>CDCR #D-18168,<br><br>                    Plaintiff,<br><br>vs.<br><br>GEORGE A. NEOTTI; SUGLISH;<br>B. KOEN; R. DAVIS; JANNUSH;<br>SANCHEZ; HUBERT,<br><br>                    Defendants. | Civil No.   11cv2352 IEG (PCL)<br><br>**ORDER GRANTING<br>DEFENDANTS' MOTION TO<br>DISMISS PLAINTIFF'S FOURTH<br>AMENDED COMPLAINT<br>PURSUANT TO FED.R.CIV.P. 12(b)**<br><br>**[ECF No. 57]** |

## I.

### PROCEDURAL BACKGROUND

Martin Vazquez ("Plaintiff"), a prisoner currently incarcerated at Calipatria State Prison located in Calipatria, California, proceeding pro se and *in forma pauperis,* filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 11, 2011.  Currently, Plaintiff is proceeding with his Fourth Amended Complaint ("FAC") which was filed on June 5, 2012. [ECF No. 26.]

/ / /

/ / /

Defendants Davis, Koen, Neotti, Sanchez, Suglich, Hubert and Jannusch have filed a Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)[1]. [ECF No. 57.] Plaintiff has filed his Opposition to Defendants' Motion. [ECF No. 59.] The Court has determined that Defendant's Motion is suitable for disposition upon the papers without oral argument and that no Report and Recommendation from Magistrate Judge Peter Lewis is necessary. *See* S.D. CAL. CIVLR 7.1(d)(1), 72.3(e).

## II.

### FACTUAL ALLEGATIONS

On February 3, 2010, Plaintiff was housed in Administrative Segregation ("Ad-Seg") at the Richard J. Donovan Correctional Facility ("RJD"). (*See* FAC at 4.) Plaintiff was also a participant in the psychiatric program. (*Id.*) On this date, Plaintiff had a physical altercation with his cellmate which led to Sergeant Payne[2] using pepper spray to break up the fight. (*Id.*) Plaintiff claims that he lost two of his front teeth and had additional injuries to his spine. (*Id.*) Plaintiff further alleges that all documents and reports related to this incident were destroyed in violation of policies by the California Department of Corrections and Rehabilitation ("CDCR"). (*Id.*)

Plaintiff was later moved to an "overflow" building with inmate Chris Macias. (*Id.*) Plaintiff claims Defendant Hubert would pass by their cell on several occasions and make "punching motions and say go on fight." (*Id.*) Plaintiff contends these actions by Defendant Hubert caused tension between him and Inmate Macias who were both participants in RJD's psychiatric program. (*Id.*) Several days later while both Plaintiff and Inmate Macias were being escorted to the yard, Plaintiff alleges Defendant Hubert "squeezed" his arm and used other body language to indicate that Plaintiff should attack Inmate Macias. (*Id.*) As both Plaintiff and Inmate Macias arrived "at the cages," Plaintiff alleges Inmate Macias "attacked me, punching

---

[1] The Court takes judicial notice that Defendants have provided Plaintiff notice of his opportunity to develop a record and to include in his Opposition to Defendants' Motion whatever arguments and documentary evidence he may have to show that he did, in fact, exhaust all administrative remedies as were available to him prior to filing suit as required by *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). [ECF No. 57-2.]

[2] Plaintiff has not named Sergeant Payne as a Defendant in his Fourth Amended Complaint.

me in the mouth." (*Id.*) Plaintiff defended himself and both inmates were pepper sprayed to break up the fight. (*Id.*) Plaintiff claims he was not given medical treatment for his injuries from the fight. (*Id.*) Plaintiff provided a statement to Sergeant Payne and later told Defendant Suglich of the misconduct by correctional officers. (*Id.*)

On March 19, 2010, Plaintiff claims Defendant Koen "forced" him into a cell with Inmate Garcia. (*Id.* at 5.) As soon as both inmates had their handcuffs removed, Plaintiff and Inmate Garcia began "striking one another." (*Id.*) Correctional officers used pepper spray to break up the fight and both were taken to the showers for decontamination. (*Id.*) Later, Defendant Davis came to take Plaintiff to another cell and housed him with Inmate Vega. (*Id.*) It is not clear from Plaintiff's allegations but it appears as though he had another altercation with Inmate Vega. (*Id.*) Plaintiff alleges Defendants Koen, Suglish, Davis and other correctional officers were setting up "gladiator fights" among inmates. (*Id.*) Plaintiff further alleges Correctional Office Cota "admonished [Defendant] Koen about his conduct." (*Id.*)

Plaintiff appeared before the Institution Classification Committee ("ICC") and "made [his] grievances known." (*Id.*) Plaintiff alleges that he informed the ICC about the "staff brutality," the "inappropriate" actions of the correctional officers in Ad-Seg and the lack of an adequate response by Defendant Suglich other than to tell Plaintiff to file a grievance. (*Id.*) Plaintiff contends he has filed to number of grievances to which he has "suffered reprisals." (*Id.*) Plaintiff alleges that correctional officers Clark and Armstead came to his cell to inform him that Defendant Koen was "making them send [Plaintiff's] property home or destroyed." (*Id.*) As a result, Plaintiff claims Defendant Koen "destroyed 16 years" of his property in response to Plaintiff filing grievances. (*Id.*)

On April 20, 2010, Plaintiff was informed by Defendant Davis that he would be getting another cellmate. (*Id.* at 6.) Plaintiff informed Defendant Davis that he was supposed to have a single cell in light of all the past incidents. (*Id.*) Plaintiff claims Defendant Davis told him "you know you can't refuse!" (*Id.*) Plaintiff was escorted by Defendant Davis, at which time Plaintiff alleges Defendant Davis gave Plaintiff a weapon and said "this time make it good, we are moving you in the cell of that piece of shit Lewis Osborn." (*Id.*) Plaintiff was taken back

to his cell to remove his property, then was escorted again by Defendant Davis to the cell of Inmate Osborne who had been handcuffed by Defendant Jannusch. (*Id.*) After both Plaintiff and Inmate Osborne were uncuffed, Plaintiff "sliced both sides of [Inmate Osborne's] face." (*Id.*) Plaintiff alleges he was then taken to the showers for decontamination where he alleges Defendant Davis told him "you're going to eat good tonight." (*Id.*) Defendant Davis then asked for the weapon back which Plaintiff returned. (*Id.*) Plaintiff claims that correctional officers destroyed all the reports relating to this incident but he was given a rules violation report ("RVR"). (*Id.*)

Plaintiff alleges he suffers from a "bulging disc" and a "pinched sciatic nerve." (*Id.* at 7.) He had been prescribed neurotine, robaxin, and ibuprofen in February of 2010 but he ran out of this medication in May of 2010. (*Id.*) Plaintiff was taken to an outside hospital for a consultation where a doctor indicated that he was not a candidate for surgery but he should receive additional medication. (*Id.*) When he returned to the prison, Plaintiff informed Defendant Sanchez, a nurse, about the recommendation. (*Id.*) Defendant Sanchez informed Plaintiff that she would schedule him for a visit to the prison hospital but she failed to do so. (*Id.*) In addition, Plaintiff submitted several slips to remind her of the need for medication but she "ignored" Plaintiff. (*Id.*) Plaintiff claims that he suffered from withdrawals when he ran out of his medication in May of 2010 and was unable to sleep or "walk in comfort." (*Id.*) Plaintiff "fell down in the cages/yard" and had to be carried back to his cell but was never seen by medical staff. (*Id.*) Plaintiff alleges that he was told that he would not obtain medical attention because correctional officers were retaliating against him for filing grievances. (*Id.*)

Plaintiff was transferred to a facility in El Centro so he could attend court. (*Id.*) Plaintiff was examined by a neurologist who "immediately" agreed to "reinstate the old medication." (*Id.*) Several months later, Plaintiff was examined by Dr. Harding, a neurosurgeon, who recommended surgery. (*Id.*)

/ / /

/ / /

/ / /

# III.

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)

Defendants move to dismiss the entirety of Plaintiff's Fourth Amended Complaint on the grounds that it should be dismissed for failing to exhaust available administrative remedies pursuant to FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a).

### A.  Standard of Review per FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a)

Defendants claims Plaintiff failed to exhaust available administrative remedies as to the claims against them pursuant to 42 U.S.C. § 1997e(a) before bringing this suit, therefore, Defendants seek dismissal under the "non-enumerated" provisions of FED.R.CIV.P. 12(b). The Ninth Circuit has held that "failure to exhaust nonjudicial remedies is a matter of abatement" not going to the merits of the case and is properly raised pursuant to a motion to dismiss, including a non-enumerated motion under FED.R.CIV.P. 12(b). *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) It is also well established that non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which defendant prison officials have the burden of raising and proving. *See Jones v. Bock,* 594 U.S. 199, 216 (2007);  *Wyatt*, 315 F.3d at 1119.  However, unlike under Rule 12(b)(6), "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, F.3d at 1120.

### B.  Exhaustion of Administrative Remedies per 42 U.S.C. § 1997e(a)

The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). 42 U.S.C. § 1997e(a) has been construed broadly to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case, *id.* at 525-26, and to encompass inmate suits about both general circumstances and particular episodes of prison life--including incidents of alleged excessive

force. *Id.* at 532. Finally, "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738, 741 (2001); *see also McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002).

The State of California provides its prisoners and parolees the right to administratively appeal "any departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates and parolees." CAL. CODE REGS., tit. 15 § 3084.1(a) (2011). Prior to January 28, 2011, in order to exhaust available administrative remedies within this system, a prisoner would proceed through several levels: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. CAL. CODE REGS., tit. 15 § 3084.1(a) (2010). However, in January 2011, the process was changed. Following January 28, 2011, prison regulations no longer required an inmate to submit to informal resolution while the other remaining levels remain the same. CAL. CODE REGS. tit. 15 § 3084.5 (2011). The claims in this matter are prior to the changes made in 2011, so the process that was available in 2010, as outlined above, is the controlling administrative grievance process.

### C.     Application of 42 U.S.C. § 1997e(a) to Plaintiff's Case

Defendants argue that Plaintiff did file several administrative grievances but he failed to "exhaust his administrative remedies as to those claims through all levels of administrative appeal." (Defs.' Memo of Ps & As in Supp. of MTD, ECF No. 57-1, at 6.) In support of their claims, Defendants supply the declarations of R. Olson, Appeals Coordinator for RJD (ECF No. 57-3), J.D. Lozano, Chief of the Offices of Appeals (ECF No. 57-4), and Jodie Rivera, Health Care Appeals Coordinator for RJD (ECF No. 57-5.).

In his Declaration, R. Olson lists a number of grievances filed by Plaintiff in 2010 and 2011. (*See* Olson Decl. at 7.) Each one of these grievances, with the exception of one, was screened out for various reasons at the initial stage and were not assigned a log number. (*Id.*) Plaintiff filed an appeal On April 11, 2011 that was given a log number of RJD-10-963. (*Id.*,

Ex. C.) In this grievance, Plaintiff claims that Defendant Koen is "singling [him] out" by making him send his property home in retaliation for Plaintiff filing grievances against other correctional officers. (*Id.*) Plaintiff received a response at the First Level of Review and rather than submitting it to the Second Level of Review, Plaintiff bypassed the Second Level and submitted it to the Third Level of Review of the Inmate Appeals Branch in Sacramento. This attempt was sent back to Plaintiff with the admonishment that his grievance must be submitted to the Second Level of review. (*Id.*)

Defendants have also submitted the declaration of J.D. Lozano, the Chief of the Office of Appeals for the CDCR. (ECF No. 57-4.) In this Declaration, Lozano states that "this office has not accepted and issued a third level decision on any appeal Plaintiff filed from February 2010 to the present." (Lozano Decl. at ¶ 8.)

With respect to Plaintiff's inadequate health care claims, Defendants supply the declaration of Jodie Rivera, Health Care Appeals Coordinator for RJD. (ECF No. 57-5.) Plaintiff submitted a grievance in which he sought a lower bunk in a cell on a lower tier due to back issues. (*See* Rivera Decl. at ¶ 7) Defendants gave this grievance a log number and responded to the informal level of review on June 15, 2010. (*Id.* at ¶ 8, Ex. A, Inmate/Parolee Health Care Appeal Form, Log No. RJD-19-10-12363.) Plaintiff was dissatisfied with the response and submitted an appeal to the next level of review in which he added the new claims against Defendant Sanchez that are the subject of this action. (*Id.*) Defendants returned Plaintiff's grievance and "screened it out" due to "changing issues." (*Id.*, Ex. A, Health Care Appeals Office Inmate/Parolee Appeals Screening Form dated June 24, 2010, Log No. RJD-19-10-12363.) In this response by Defendants, Plaintiff was specifically informed that in order "to continue your issue regarding medication and needing to be seen at the pain management clinic complete a new 602-HC completing Section A and B." (*Id.*) Defendants declare that their records show that "Plaintiff did not submit another, separate 602-HC form alleging that Nurse Sanchez failed to renew his pain medication or otherwise failed to provide Plaintiff with proper medical treatment." (Rivera Decl. at ¶ 9.)

///

1       The Supreme Court has made clear that Plaintiff must "properly exhaust" his administrative remedies before filing a prison conditions action. In *Woodford v. Ngo*, 548 U.S. 81, 91 (2006), the Supreme Court held that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 91. The Court further held that "[proper exhaustion] means ... a prisoner must complete the administrative review process in accordance with the applicable procedural rules ... as a precondition to bring suit in federal court." *Id.*

      Plaintiff has failed to submit any evidence to rebut Defendants' showing that he failed to properly exhaust his administrative grievances prior to bringing this action. Plaintiff makes an assertion that Defendants lost his appeals, however, the record shows that Defendants did receive a number of Plaintiff's administrative grievances that they later deemed untimely.

      For all the reasons set forth above, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint for failing to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). This dismissal is without prejudice to permit Plaintiff to file a separate action once he has properly exhausted his administrative remedies.

## IV.
### CONCLUSION AND ORDER

Based on the foregoing, the Court hereby:

(1)     **GRANTS** Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint for failure to exhaust his administrative remedies pursuant to FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a) without prejudice.

(2)     The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

DATED: October 25, 2012

                                                   *Irma E. Gonzalez*
                                                  HON. IRMA E. GONZALEZ
                                                  United States District Judge